IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01924-RBJ

JUAN A. SANCHEZ, on behalf of himself and a Class of persons similarly situated,

    Plaintiff,

v.

FORD MOTOR COMPANY, d/b/a Lincoln Motor Company,

    Defendant.

---

ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

---

This is another case in which a plaintiff complains that Ford Motor Company's advertisements touting the fuel economy of various models misled buyers of those vehicles. *See, e.g.*, *Gilles v. Ford Motor Co.*, 13-cv-00357-RBJ, 2014 WL 544990 (Feb. 12, 2014) (denying Ford's motion to dismiss). Jurisdiction is proper under 28 U.S.C. § 1332(d).

Mr. Sanchez brings claims against Ford in connection with its advertisement of the 2010-2013 Lincoln MKZ hybrid vehicles. Ford responds with a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No. 17.] Ford raises the same arguments it used in Mr. Gilles's case: that Mr. Sanchez's claims are defective by reason of federal preemption, insufficient pleading, abstention, standing, and the savings clause of the Colorado Consumer Protection Act ("CCPA"). Important differences exist between these cases, however, and because the only advertisements that Mr. Sanchez alleges that he actually saw appear to be compliant with the applicable federal regulations, I conclude that the only viable claims he brings are those based on the statements allegedly made by dealership employees.

1

Ford has also moved to strike the class allegations.  [ECF No. 30].  Although that motion has been briefed, I suspect that the parties might approach it differently in light of the present ruling on the Rule 12(b)(6) motion.  For example, they have not discussed the ascertainability issue that has been raised in *Gilles*.  Accordingly, the parties may file short supplements to their briefing.

## I. FACTS.

Mr. Sanchez purchased a 2012 MKZ Hybrid from Corley's Albuquerque Lincoln.  [ECF No. 16 ¶ 34.]  Prior to that purchase, he claims to have had discussions with dealership staff during which the staff indicated that Mr. Sanchez could expect to achieve the advertised fuel efficiency under normal driving conditions.  *Id.*  After being disappointed with the 2012 model's fuel efficiency, Mr. Sanchez considered purchasing the 2013 model.  Mr. Sanchez saw a television advertisement for the 2013 model that indicated it would achieve 45 combined miles per gallon ("the 45 MPG COMBINED graphic").  *Id.* ¶ 37.  The advertisement notes that the fuel economy data are EPA estimates.  Mr. Sanchez then discussed the 2013 model with staff at Landmark Lincoln in Denver, and they indicated that the new model contained new technology that improved the fuel efficiency of the vehicle over previous models.  *Id.* ¶ 38.  Furthermore, the staff confirmed that consistent with Ford's advertisements the 2013 MKZ Hybrid would achieve 45 miles per gallon under both city and highway driving conditions.  *Id.*

Mr. Sanchez identifies other advertisements that purportedly misrepresented the fuel efficiency of the MKZ Hybrid, although nowhere does he claim to have seen them himself.  For instance, Mr. Sanchez describes a television advertisement in which the dashboard display depicts the EPA estimated mileage but lacks an accompanying indication that the estimate is derived from EPA testing or that individual consumer experiences will vary.  *Id.* ¶ 29.  He also

singles out an advertisement from a Ford dealership in Arizona that he claims contains inadequate disclaimers and makes additional statements like "you'll save money on gas" and "717 miles on a single tank" that go beyond mere reporting of the EPA estimates. *Id.* Finally, he points to statements by Ford employees such as "everything is brand new about [the MKZ] from the powertrain line up . . ." and that the newer model had up to 20% better fuel economy than previous years. *Id.* ¶¶ 22, 23. He suggests that these advertisements might have been seen by other members of the purported class. [ECF No. 18 at 34.]

After years of driving the MKZ Hybrid, Mr. Sanchez "did not achieve the advertised fuel efficiency." [ECF No. 16 ¶¶ 35, 41, 43.] Mr. Sanchez now asserts multiple claims on his own behalf and on behalf of all members of a class of MKZ Hybrid purchasers: violation of the Colorado Consumer Protection Act ("CCPA"), violation of applicable state unfair trade practice laws, breach of express warranty, breach of contract, violation of the Magnuson-Moss Warranty Act, intentional and/or negligent misrepresentation, and unjust enrichment.

## II. DISCUSSION.

### A. <u>Standard of Review.</u>

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory are not entitled to an assumption of truth. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the

threshold pleading standard.  *See e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

**B.  <u>Sufficiency of Pleadings.</u>**

Ford notes that many of the offending advertisements identified by Mr. Sanchez were either never seen by him prior to his purchase or pertained to model years that he did not purchase.  Mr. Sanchez counters that he saw some of the advertisements, and that other members of the class may have seen the rest.  I agree with Ford that Mr. Sanchez cannot rely on the rest of the class to meet the pleading requirements.  I also agree that Mr. Sanchez's claims based upon the advertisements he did see are preempted by federal law.

In addition to the standard pleading requirements summarized above, the Federal Rules of Civil Procedure require claims of fraud to be pled with specificity.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  In the Tenth Circuit a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991).

A single named plaintiff bringing a putative class action is not excused from the requirement of alleging individual injury.  *See Nero v. American Family Mut. Ins. Co.*, 11-CV-02717-PAB-MJW, 2013 WL 5323147, at *2 (D. Colo. Sept. 23, 2013) ("As a general rule, a putative class representative who does not sufficiently allege individual injury may not seek relief on behalf of himself or any other member of the class. . . .  Hence in order to represent the class, plaintiff 'must allege and show that [he] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class to which [he] belong[s] and which [he]

purport[s] to represent.'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

In this case, Mr. Sanchez attempts to plead his case by pointing to many advertisements that he did not see. Because his claims are based on misrepresentation, breach of warranty, breach of contract and unjust enrichment, these specific advertisements could not have caused him individual injury. The advertisements in question are those that displayed the dashboard fuel economy, (ECF No. 16 ¶ 29), that stated a driver could travel 717 miles on a single tank of gas, (*id.*), and the statements by Ford employees about the technological improvements in later model years, (*id.* ¶¶ 22, 23). Even if Mr. Sanchez had seen the statements about technological improvements, they appear (as discussed later) to be nothing more than puffery.

Mr. Sanchez attempts to save his claims by arguing that other members of the class might have seen and relied upon these statements. [ECF No. 18 at 34.] ("While Mr. Sanchez did not own a 2011 Lincoln MKZ Hybrid and did not live in Arizona, members of the proposed class did, and at a minimum these commercials demonstrate the actionable statements that will likely be developed through discovery."). As explained above, a named plaintiff must demonstrate individual standing. *See Nero*, 2013 WL 5323147, at *2. If he cannot sufficiently allege individual injury (as I find below), then he cannot lean on the supposed injuries of other members of the putative class. Therefore I find that the only factual bases that he could have for alleging individual injury by Ford in this case would be the advertisements and statements that he alleged he saw: (1) the 45 MPG COMBINED graphic and accompanying statements by Ford and (2) statements made by staff at the two Lincoln dealerships where Mr. Sanchez purchased his MKZ Hybrids.

## C. **Preemption By FTC Regulations.**

Ford argues that Mr. Sanchez's claims based on the 45 MPG COMBINED graphic are preempted by federal law. As a preliminary matter, it is important to distinguish between the use of the 45 MPG COMBINED graphic itself and the inclusion of other statements—specifically the voice over—accompanying the graphic. Mr. Sanchez's claims based on the graphic and accompanying disclosure are preempted. As explained in the following section, the accompanying statements probably are not preempted but they are non-actionable puffery.

The Supremacy Clause of the U.S. Constitution gives Congress the power to preempt state law. *See Choate v. Champion Home Builders, Co.*, 222 F.3d 788, 791-92 (10th Cir. 2000). Not only federal statutes but also "an agency's preemption regulations, promulgated pursuant to Congressional authority, have the same preemptive effect as statutes." *Id.* (quoting *Meyer v. Conlon*, 162 F.3d 1264, 1268 (10th Cir. 1998)).

There are three types of federal preemption, one express, the other two implied. Express preemption occurs when Congress defines explicitly the extent to which its enactment preempts state laws. "Field" preemption occurs when state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). Finally, "conflict" preemption occurs when "it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 79.

In this case there are two possible sources of federal preemption regarding the advertisements that Mr. Sanchez saw. Ford first points to the Energy Policy and Conservation Act ("EPCA") of 1975, 49 U.S.C. § 32901-32919 and in particular its express preemption provisions at 49 U.S.C. §§ 32919(a) and (b). As I explained in *Gilles*, those provisions deal only

with the so-called Monroney Stickers that manufacturers must attach to every car and the information booklet that dealers must make available to buyers.  2014 WL 544990, at *3. Because Mr. Sanchez, like Mr. Gilles, is not attacking Ford's use of the Monroney Sticker or the information booklet, nor is he seeking to impose additional or different requirements on those activities, the ECPA's express preemption provisions are inapposite.

The second source of possible preemption—the FTC regulations governing fuel economy advertising—is a closer question.  Although the EPA did not undertake regulation of automobile manufacturers' advertising beyond the Monroney Sticker and the booklet, the Federal Trade Commission (FTC) did.  Specifically, in Part 259 entitled "Guide Concerning Fuel Economy Advertising for New Automobiles," issued pursuant to 15 U.S.C. § 41-58, the FTC regulation states in relevant part:

> **Advertising disclosures.**
>
> (a)   No manufacturer or dealer shall make any express or implied representation in advertising concerning the fuel economy of any new automobile unless such representation is accompanied by the following clear and conspicuous disclosures:
>
> (1) If the advertisement makes:
>
> (i) Both a city and a highway fuel economy representation, both the "estimated city mpg" and the "estimated highway mpg" of such new automobile must be must be disclosed;
>
> . . . ; and
>
> (2) That the U.S. Environmental Protection Agency is the source of the "estimated city mpg" and "estimated highway mpg" and that the numbers are estimates.

16 C.F.R. § 259.2.

Simply put, when a manufacturer includes miles per gallon numbers in an advertisement, it must, in a clear and conspicuous manner, include the EPA mileage estimates, state that they

are estimates, and indicate that the EPA is the source of the estimates.  The regulation does not require the addition of an "actual results will vary" disclaimer.[1]

The preemptive effect of the FTC regulations is what distinguishes Mr. Sanchez's case from the *Gilles* case.  Unlike Mr. Gilles, everything that Mr. Sanchez saw or heard from Ford before purchasing his MKZ Hybrids was fully compliant with the regulations.  I agree with Ford that the 45 MPG-COMBINED advertisement "contains the very disclosure language *required* by federal law."  [ECF No. 29 at .] (emphasis in original).  FTC guidelines explain that the use of "EPA estimate" is sufficient disclosure.  16 C.F.R. § 259.2(a)(2), n.5.

Insofar as Mr. Sanchez is claiming that the EPA estimates in the 45 MPG COMBINED graphic were inherently deceptive, failed to comply with federal regulations, or that the disclosure was too small, difficult to read, confusing, those claims are preempted by the FTC regulations.  *See Paduano v. American Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1470-71 (Cal Ct. App. Jan. 12, 2009) (distinguishing between preempted claims based on "statements that identify the EPA fuel economy estimates" and actionable claims based on "other statements Honda made in its brochure" such as "Just drive the Hybrid like [one] would a conventional car and save on fuel bills").  The advertisement complied with the regulations, and any alternative requirement that Mr. Sanchez could seek to impose would conflict with the detailed guidelines in the FTC regulations.

Mr. Sanchez seems to misunderstand the applicability of the FTC regulations, arguing that they do not apply to television advertisements.  [ECF No. 18 at 29.]  This is incorrect.  The regulation specifically states that it applies "regardless of the media in which the advertisement

---

[1] The regulations permit the manufacturer to include in addition estimates derived from non-EPA tests provided that the EPA tests estimates are given equal or greater prominence, depending on the type of advertisement, and the source, driving conditions and other variables affecting the non-EPA test are identified.  16 C.F.R. § 259 (c).

appears," and it goes on to provide additional details for television advertisements.  16 C.F.R. § 259.2(a)(2) n.5.

Mr. Gilles survived Ford's preemption argument because the advertisements he claims to have seen failed to comply with applicable FTC regulations that required disclosure that the EPA was the source of the estimates in the advertisement.  In the present case, however, the only advertisement that Mr. Sanchez allegedly saw did contain the required disclosures.  Because the advertisement complied with federal regulations, and because principles of conflict preemption would preclude this court from imposing any requirements not imposed by the federal regulations, I agree with Ford that Mr. Sanchez's claims based on the 45 MPG COMBINED graphic are preempted.

The rest of Mr. Sanchez's claims are based on statements made in the same 45 MPG COMBINED advertisement that Mr. Sanchez believes went beyond mere disclosure of the EPA estimates and constitute affirmative misrepresentation about the fuel economy of the MKZ Hybrid.  If that allegation were true it could lead to actionable, non-preempted claims under Colorado law.  I now turn to those arguments.

**D.  Statements Going Beyond Mere Disclosure Are Puffery.**

Pivoting from his initial argument that Ford's fuel economy data were false and grounded in non-compliance with EPA regulations, (*see* ECF No. 16 ¶¶ 3, 4), Mr. Sanchez now states that he "actually is alleging that deceptive and false representations in Ford's advertisements about the Lincoln MKZ Hybrid beyond the EPA estimate itself" caused his injury.  [ECF No. 18 at 17.] Specifically he argues that Ford should be liable for any statements suggesting that normal driving behavior would enable purchasers to match the EPA estimated fuel economy.  These claims are not preempted by federal law.  But Mr. Sanchez's pleadings do not indicate that he

saw the advertisements that suggested an MKZ Hybrid could travel 717 miles on one tank or lacked the required FTC disclosures.

The statements that Mr. Sanchez saw and that he argues go beyond mere disclosure to become affirmative misrepresentations are, in my view, puffery. General "statements of opinion" or "statements of value or quality" are non-actionable puffery as long as they were not "made with the purpose of having them accepted as fact." *Warner v. Ford Motor Co.*, Civ. No. 06-cv-02443, 2008 WL 4452338, at *8-9 (D. Colo. Sept. 30, 2008) (quoting *Park Rise Homeowners Ass'n v. Res. Constr. Co.*, 155 P.3d 427, 435-36 (Colo. App. 2006)). Thus, for example, the familiar slogan "Built Ford Tough" is puffery because it is "extremely general, not directed at any specific attribute of Ford vehicles and are not representations of fact subject to measure." *Id.* at *9.

The voice-over accompanying the 45 MPG COMBINED graphic uses the phrases "big ideas," "going places others aren't," and "doing what others are not." [ECF No. 16 ¶ 25.] When viewed in conjunction with the graphic, those statements do not create the overall impression of Ford's promising that the EPA estimate can be achieved through normal driving behavior. Rather they are generic statements not directed at any particular attribute of the vehicle that are permitted as a way for sellers to "exalt the value or quality of their own property to the highest point credulity will bear." *Park Rise Homeowners Ass'n*, 155 P.3d at 435 (quoting *Groves v. Chase*, 151 P. 913, 915 (Colo. 1915)). *See also Ruggles v. Ventex Tech., Inc.*, Civ. No. 5:09-141, 2011 WL 2971839, at *7 (E.D. Ken. July 21, 2011) (finding the following statement to be non-actionable puffery: "Technology so advanced, no other neon power supply or transformer even comes close in performance and reliability to Ventex Generation III Units").

**E. Dealership Statements.**

The statements made to Mr. Sanchez by staff at the Lincoln dealerships where he purchased his MKZ Hybrids provide the only remaining factual basis for his claims. [ECF No. 16 ¶¶ 34, 38.]

But many of the cases cited by Ford for the proposition that dealers are not agents of manufacturers involved grants of summary judgment after extensive discovery. *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, Civ. No. 03-4558 (GEB), 2010 WL 2813788, at *16-17 (D. N.J. Jul. 9, 2010) (dismissing agency allegations at summary judgment stage and finding that "[a]lthough a plaintiff seeking to show such an agency relationship faces an 'uphill battle,' the inquiry is fact-specific and no per se rule bars such a finding on an appropriate factual basis") (citation omitted)); *Arnson v. General Motors Corp.*, 377 F. Supp. 209, 212-13 (N.D. Ohio 1974) (dismissing claims based on agency relationship at summary judgment stage after thorough review of the dealership agreement, but also noting that the "weight of authority" supports the idea that dealers are not agents of manufacturers for purposes of new vehicle sales); LaBella v. Charlie Thomas, Inc., 942 S.W.2d 127, 136 (Tex. Ct. App. 1997) (upholding summary judgment observing that "[a] dealer is not per se an agent of the manufacturer. . . . [but t]he nature of the relationship is determined by the terms of the dealership agreement"). To be sure, some cases point the other way even at the pleading stage. *See, e.g.*, *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 592-93 (Ill. 1996) (dismissing plaintiffs fraud claims based on supposed agency relationship between manufacturer and dealer where plaintiff failed to plead any facts indicating an agency relationship besides the fact that the dealer held itself out as an "authorized dealer"); *Washington v. Courtesy Motor Sales, Inc.*, 199 N.E.2d 263, 265 (Ill. 1964) (same) (citation omitted).

In this case, Mr. Sanchez pled the following facts regarding the existence of an agency relationship. In explaining the relationship between the parties, Mr. Sanchez alleges that Ford "distributed MKZ Hybrid vehicles and sells these vehicles through its network of dealers." [ECF No. 16 ¶ 10.] He also claims that he spoke to the owner and a salesperson at Corley's Albuquerque Lincoln where both individuals "communicated to Plaintiff that he could expect to get the estimated mileage in the real world." *Id.* ¶ 34. Finally, he claims that he specifically asked staff at a Lincoln dealership in Denver whether the model he purchased would match the fuel economy estimates he had viewed from Ford's advertising, and staff confirmed this fact to him. *Id.* ¶ 38.

The facts as alleged, even assuming that the statements were made as described, do not conclusively establish an agency relationship. But neither are they so conclusory regarding the existence of the relationship as to prohibit Mr. Sanchez from bringing this claim. As in the above cited cases, Mr. Sanchez has met the minimal burden of pleading an agency relationship. As in the *Gilles* case, Ford's "arguments go beyond the pleadings to questions—such as the reasonableness of [plaintiff's] reliance or the existence and scope of an agency relationship—that can be more fruitfully addressed after discovery." *Gilles*, 2014 WL 544990, at *6.

### III.  ORDER.

1. Defendant's motion to dismiss [ECF No. 17] is GRANTED IN PART AND DENIED IN PART. The motion is granted insofar as Mr. Sanchez relies on advertisements or statements other than those made by alleged agents of Ford at the two Lincoln dealerships visited by Mr. Sanchez.

2. Discovery is stayed pending supplemental briefing and a ruling on defendant's motion to strike the class allegation, because if that motion is granted, the Court

probably lacks subject matter to proceed further.  If the motion to strike the class is denied, then discovery may proceed insofar as it is limited to matters related to the agency relationship between Ford and the dealerships and the substance of the dealership statements.

DATED this 29th day of May, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge